HARRY S. HARTLEY *vs.* INHABITANTS OF GRANVILLE.

Hampden.    September 23, 1913. — October 22, 1913.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DE COURCY, JJ.

*Constable. Officer. Contract,* Consideration, Validity. *Words,* "Keep the peace."

It is not a part of the official duty of a constable in a country town of this Commonwealth to spend a substantial portion of his time, taken from his ordinary occupation, in performing the work commonly done by detectives by seeking evidence which may lead to the conviction of criminals.

Although the well settled rule in regard to peace officers is that a promise of reward or of additional compensation to such an officer for services rendered in the performance of his duty cannot be enforced, either as being without consideration or contrary to public policy, yet a contract to pay a public officer for services rendered outside his official duty and not inconsistent with it is valid and enforceable.

A reward of a sum of money offered by a country town to any one furnishing evidence that will convict the person or persons who set recent fires in the town lawfully may be earned by a constable of the town who in consequence of the offer spent a substantial amount of time in the performance of purely detective work that led to such conviction.

CONTRACT to recover a reward of $300 offered by the defendant on May 21, 1909, "to any person furnishing evidence that will convict the person or persons who have set the recent fires in said town," and alleged to have been earned by the arrest on May 28, 1909, of one Brooks, who afterwards was convicted, by the plaintiff who was a constable of the defendant elected at the annual town meeting held in March, 1909, to serve during that year. Writ dated February 25, 1911.

In the Superior Court the case was tried before *Keating, J.,*

without a jury. At the close of the evidence, which is described in the opinion, the defendant asked the judge to rule that "upon all the law and evidence" the plaintiff could not recover. The judge refused to make this ruling, and made the following memorandum of decision:

"The plaintiff furnished evidence which resulted in the conviction of George F. Brooks, the person who set the fires in the town of Granville, as alleged in the plaintiff's declaration. Such services were outside the line of the plaintiff's duty as constable and were rendered by him upon learning that the town of Granville had offered a reward for the purpose of gaining the reward. The court therefore ruled that the fact that the plaintiff was a constable did not preclude him from recovering the reward for performing such services."

The judge found for the plaintiff in the sum claimed; and the defendant alleged exceptions.

The case was submitted on briefs.

*A. S. Kneil,* for the defendant.

*H. B. Putnam,* for the plaintiff.

RUGG, C. J. This is an action to recover the amount of a reward which the selectmen of the defendant in 1909 offered "to any person furnishing evidence that will convict the person or persons who" had set recent fires in that town. The plaintiff was duly elected and qualified as a constable of the defendant town for that year. There was no evidence tending to show that any regular compensation was paid to the plaintiff as constable or that he had any special arrangement with the defendant for pay, or that his duties were any other than such as by the common and the statute law of the Commonwealth are incumbent upon constables. The general duties of such an officer are to be vigilant to preserve the peace, to prevent the commission of crime, and to arrest all offenders in his town who might be arrested without warrant, and to procure warrants in other instances of crime committed. The quaint description of his duties given in early definitions is "to keep the King's peace." To "keep the peace" in its broad sense means to quell riots and disturbances of every nature, to prevent the commission of crime and to see that offenders in their several districts are arrested and prosecuted. Constables possess somewhat extensive powers. See 1 Bl. Com. 356.

But in our country communities constables as such are not expected nor required to devote a considerable portion of their time to the work of their office. In this regard they stand on a basis quite different from the members of an organized police force. It is matter of common knowledge that the country constable in this Commonwealth is elected oftentimes from among those who labor regularly to earn a livelihood for themselves and their families, but whose character, courage or reputation for physical prowess are such as to make them efficient conservators of the public peace. The theory on which the office now is based (apart from the functions of serving papers) is that a number of competent men scattered through the territory of each of the country towns, charged with such duties, is an important factor in making the towns safe for residence by law abiding people.

The office of constable is an ancient one, but its duties have been modified from time to time by custom and statute. The constable is a public officer. Any person elected to the office is liable to a forfeit of money if he refuses to serve. R. L. c. 25, § 97. He is not entitled to compensation for services rendered to the town in the performance of general duties as peace officer, at all events in the absence of a special contract. *Riopel* v. *Worcester*, 213 Mass. 15. The theory of the law is that those chosen to such office by their fellow citizens will accept and execute the office either from a sense of public duty or under the compulsion arising from the pecuniary forfeit entailed by a refusal, and not from hope of money gain. *Farnsworth* v. *Melrose*, 122 Mass. 268.

These considerations re-enforce the conclusion that the obligation is not incumbent upon the constable to give up his ordinary occupation and spend substantial time in search for evidence which may or may not lead to the detection of criminals, nor perform the work commonly done by detectives.

The general rule with reference to peace officers is well settled that a promise of reward or additional compensation to a public officer for services rendered in the performance of his duty cannot be enforced, either as being without consideration or contrary to public policy. *Pool* v. *Boston*, 5 Cush. 219. *Dunham* v. *Stockbridge*, 133 Mass. 233. *Davies* v. *Burns*, 5 Allen, 349. *Brophy* v. *Marble*, 118 Mass. 548. This rule is based upon sound con-

siderations and ought not to be narrowed in any respect. But it is also true that a contract to pay a public officer for services rendered outside and not inconsistent with his official duty is valid and may be enforced. A reward offered for such service is also enforceable. *Studley* v. *Ballard,* 169 Mass. 295, 296, and cases there cited. *Neville* v. *Kelly,* 12 C. B. (N. S.) 740. *Russell* v. *Stewart,* 44 Vt. 170, 173. *Kasling* v. *Morris,* 71 Texas, 584. *Bronnenberg* v. *Coburn,* 110 Ind. 169. *Smith* v. *Vernon County,* 188 Mo. 501. *Kinn* v. *First National Bank of Mineral Point,* 118 Wis. 537, 546. *Burkee* v. *Matson,* 114 Minn. 233. The many cases cited and relied on by the defendant are not in conflict with this principle. Most of them follow either the authority or reasoning of *Pool* v. *Boston, ubi supra,* and relate to facts which bring them within its rule.

There was evidence in the case at bar that the plaintiff spent substantial time in the performance of purely detective work in the investigation and collection of evidence in consequence of the offer of reward outside the service rendered in serving the warrant and doing in other respects what the law required him to do by virtue of his office as constable. The case on its facts is rather close to the line but it cannot be said that the finding of fact made by the judge was not warranted. This being so, no error was made in the ruling of law.

*Exceptions overruled.*