### REGIONAL SCHOOL DISTRICT NUMBER 4 *v.* UNITED PACIFIC INSURANCE COMPANY (2809)

HULL, BORDEN and DALY, Js.

Argued March 7—decision released May 28, 1985

*J. Paul Kane,* with whom was *Steven B. Kaplan,* for the appellant (defendant).

*James D. Reardon,* for the appellee (plaintiff).

HULL, J. The defendant, United Pacific Insurance Company, the surety on the bid bond attached to Ray Adler, Inc.'s bid on the construction of additions and alterations to the Valley Regional High School in Deep River, appeals from the trial court's judgment for the plaintiff in an action on that bond. The plaintiff claimed that Ray Adler, Inc., the low bidder on the project, failed to enter into a contract at its bid price of $1,910,000, thereby causing the plaintiff a loss of $203,000, incurred when it was forced to accept the bid of the second lowest bidder. The defendant claimed, by way of a special defense, that Adler, its principal, made an error in computing the bid, as a result of which it was entitled to withdraw the bid without liability. The court found (1) that Adler was guilty of negligence in the preparation of its bid which barred it from claiming equitable relief, (2) that despite Adler's attempted withdrawal of its bid, the plaintiff awarded the contract to it, thus binding Adler to perform the contract for the bid price and, upon Adler's default, obligating the defendant on the bid bond, and (3) that the plaintiff was entitled to $191,000 in damages, being the amount of the bid bond provided by the defendant.

United raises three claims on appeal: (1) that the court erred in finding the defendant to be obligated on its bond in the absence of acceptance of Adler's bid by the plaintiff; (2) that the court erred in requiring that Adler be free of negligence when claiming relief from any obligation under the terms of its erroneous bid; and

(3) that the court erred in its computation of damages. Because we find error with respect to the second claim raised by United, we do not consider claims one and three.[1]

On February 1, 1980, Ray Adler, Inc., submitted the low bid on the plaintiff's project. That bid was accompanied by the defendant's bond in the amount of $191,000, which constituted 10 percent of the amount of the bid. February 1 was the deadline for bids on the plaintiff's project and, at some time after 3 p.m. on that day, the plaintiff opened all of the bids. On that same day, Adler discovered an error in its bid and sent a mailgram to the plaintiff to that effect. That message was confirmed by telephone on February 4, 1980, at which time a representative of Adler offered to accept the contract if a $110,000 correction were allowed. Even with such a correction, Adler's bid would have been $93,000 lower than that of the next lowest bidder, Custom Concepts Builders of Connecticut. This offer was reiterated to the plaintiff at a meeting on February 20, 1980, but was rejected. Instead, the plaintiff awarded the contract to Custom Concepts and brought this action on Adler's bid bond, seeking damages in the amount of $191,000.

At trial, the defendant argued, by way of a special defense, that a unilateral mistake had been made by Adler in transcribing the cost of certain custom made windows into the final computation of its bid. The plaintiff asserted, and the court found, that Adler's error

---

[1] We do note, however, that, with respect to United's first claim, the court specifically found that the contract had been "awarded" to Adler. The defendant's own brief uses the terms "acceptance" and "award" somewhat interchangeably. Thus, this claim is essentially a dispute over the court's finding of fact. We will not retry the facts. Practice Book § 3060D. In any event, acceptance of the bid is not necessarily dispositive as authorities have allowed withdrawal of bids both prior to and after their acceptance. Annot., 2 A.L.R. 4th 991, §§ 3, 5; see also *Geremia* v. *Boyarsky*, 107 Conn. 387, 140 A. 749 (1928).

was the result of a "guesstimate" based on prior experience which did not take into account the fact that the windows were to be custom made. The trial court concluded "that [Adler] was negligent in the preparation of its bid," and that the defendant had, therefore, failed to establish its special defense. Thus, the court rendered judgment for the plaintiff.

The defendant's second claim of error, which we find dispositive, is directed to the trial court's use of a standard of care which required that Adler be free of negligence in order for the defendant to prevail on its special defense of unilateral mistake. The defendant claims that the proper standard to be applied is that of *gross* negligence. While we disagree with the defendant's characterization of the proper standard, we agree with the result which the defendant advocates.

This issue is the subject of an annotation entitled "Right to Rescind Bid on Public Contract," found at 2 A.L.R. 4th 991. As a general proposition, the cases discussed in that annotation suggest that two lines of authority exist as to the criteria under which a bid may be rescinded. Both lines of authority tend to agree on three requirements: (1) the mistake must relate to a material aspect of the contract; (2) the mistake must be so great that enforcement of the bid would be unconscionable; and (3) no substantial prejudice should result to the party who has not made the mistake. Id., § 2 [a].

The fourth criterion, upon which the two schools of authority disagree, is either: (1) whether the mistake was made in the absence of negligence by the mistaken party; or (2) whether the mistake was made in the absence of *gross* negligence by the mistaken party. See id., §§ 3 [a], 5 [a]. Neither of these approaches has ever been adopted in Connecticut. We decline to follow either path, as each imposes an artificial impediment

to the true guiding principle in these cases, which is the achievement of equity under all of the circumstances.

We adopt the rationale used by the court in *Geremia* v. *Boyarsky,* 107 Conn. 387, 140 A. 749 (1928), in deciding a case involving an error in an estimate on a private carpentry and housepainting contract. There, the defendant was asked to stop the work which he was doing and to compute the total cost of the job in question. In so doing, the defendant made an error in addition which reduced the estimate from $2210.40 to $1450.40. The court held that "[i]t may be conceded that the error in addition made by the defendant . . . when he hastily totaled the items of his estimate at the request of the plaintiff, involved some degree of negligence. It would be *inequitable under the circumstances* to permit the plaintiff, who had good reason to know before the contract was signed that there must have been a substantial omission or error in the amount of the bid, to take advantage of such error while the contract was still executory and he had been in no way prejudiced, and to require the defendants to do the work for an amount much less than the actual cost. In similar situations when a price has been bid which, because of erroneous arithmetical processes or by the omission of items, was based on a mistake, rescission has been allowed where the contract was still executory *and it would be inequitable to permit the other party to gain an unfair advantage from a mistake which has not prejudiced him in any way. Moffett, Hodgkins & Clarke Co.* v. *Rochester,* 178 U.S. 373, 20 Sup. Ct. 957 [44 L. Ed. 1108 (1900)]; *Bromagin* v. *Bloomington,* 234 Ill. 114, 84 N.E. 700 [1908]; *St. Nicholas Church* v. *Kropp,* 135 Minn. 115, 160 N.W. 500, L.R.A. 1917D, 741 [1916]; *Board of School Comrs.* v. *Bender,* 36 Ind.

App. 164, 72 N.E. 154 [1905]; *Barlow* v. *Jones* (N.J. Eq.) 87 Atl. 649 [1913]; *Everson* v. *International Granite Co.,* 65 Vt. 658 [1893].

"The mistake of the defendants was of so fundamental a character that the minds of the parties did not meet; *it was not, under the circumstances, the result of such culpable negligence as to bar the defendants of redress,* and the plaintiff before the contract was signed had good reason to believe that a substantial error had been made and, while the contract was still executory and he had been in no way prejudiced, refused to permit the correction of the error and attempted to take an unconscionable advantage of it. The defendants were clearly entitled to a decree canceling the contract." (Emphasis added.) *Geremia* v. *Boyarsky,* supra, 391–92. This approach refers to a number of factors common to the two lines of authority discussed earlier, yet it does not specifically apply either the negligence or gross negligence standard. Rather, it views the extent of the negligence only as a factor in determining the equities of the case.

In *Moffett Co.* v. *Rochester,* 82 F. 255 (C.C.N.D.N.Y. 1897), the federal Circuit Court, in discussing another arithmetical error regarding the cost of earth excavation stated: "The complainant is not endeavoring 'to withdraw or cancel a bid or bond.' The bill proceeds upon the theory that the bid upon which the defendants acted was not the complainant's bid; that the complainant was no more responsible for it than if it had been the result of agraphia or the mistake of a copyist or printer. In other words, that the proposal read at the meeting of the board was one which the complainant never intended to make and that the minds of the parties never met upon a contract based thereon. If the defendants are correct in their contention there is absolutely no redress for a bidder for public work, no matter how aggravated or palpable his blunder. The moment his

proposal is opened by the executive board he is held as in a grasp of steel. There is no remedy, no escape. If, through an error of his clerk, he has agreed to do work worth $1,000,000 for $10, he must be held to the strict letter of his contract while equity stands by with folded hands and sees him driven into bankruptcy. The defendants' position admits of no compromise, no exception, no middle ground." Id., 256. Upon appeal to the United States Supreme Court, the Court stated that "[t]hese remarks are so apposite and just it is difficult to add to them." *Moffett, Hodgkins & Clarke Co.* v. *Rochester,* 178 U.S. 373, 386, 20 S. Ct. 957, 44 L.Ed. 1108 (1900).

The crux of these cases was discussed in *Connecticut* v. *F.H. McGraw & Co.,* 41 F. Sup. 369 (D.Conn. 1941). There, the court was dealing with a bidding error caused by an engineer's failure to read properly the specifications for construction of a pier. The specifications made it clear that a construction procedure would be necessary which was much more expensive than that proposed by the defendant. The court noted that "[t]he only other distinction offered is that in the *Geremia* and *Rochester* cases the error was arithmetical, whereas here it is based on an incorrect reading of specifications in the light of the state engineer's requirements. The distinction seems artificial. In either event the bidder errs; in either event he is to a degree negligent. But in both, the offeree is aware of the error, and presses his advantage unfairly if he insists on the work at an inadequate price.

"Of course, it is obvious, as the State contends, that the system of public bidding, developed by experience and usual in public contracts, should not be broken down by lightly permitting bidders to withdraw because of change of mind. Such a course would be unfair to other straightforward bidders, as well as disruptive of public business. But it can hardly be a substantial

impairment of such system to grant the relief—which would clearly be given as between private citizens—in a case where a bona fide mistake is proven and was known to the State before acceptance or any loss to it." Id., 374.

In each of these cases, the courts focused on a variety of factors in determining the equities of the particular case before them. The extent or culpability of the negligence merely constituted a factor for the court to consider.

In the present case, Adler's error was material to the contract and was extremely serious. Conversely, rescission would not prejudice the plaintiff in any meaningful fashion: The lowest accurate bid was still open to the plaintiff[2] and no action had yet been taken in reliance upon Adler's inaccurate bid. See annot., 2 A.L.R. 4th 991, § 3 [a], citing *Conduit & Foundation Corporation* v. *Atlantic City,* 2 N.J. Super. 433, 64 A.2d 382 (1948).

Further, Adler promptly notified the plaintiff of the error before the parties entered into a contract and promptly offered to do the job if an amendment to its bid were allowed. See annot., 2 A.L.R. 4th §§ 2 [a], 3 [a] , 5 [a]. Adler, upon discovering its mistake, could have done no more to remedy the error than it did. If we were to rule upon this case in any other way, we would be standing by with folded hands, precisely as the circuit court in *Rochester* refused to do.

Under the circumstances of this case, even assuming that Adler was negligent, since it thereafter promptly notified the plaintiff of the error and offered to accept the contract at what was still the lowest price

---

[2] In fact, by the terms of the plaintiff's project manual, all bids were to remain open for sixty days. Thus, the plaintiff was still able to accept any of the bids submitted to it.

bid, we will not allow the plaintiff to take advantage of the error before it has suffered any detriment caused by that error.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.